**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Timothy Wayne Connors, | Case No.: 2:15-cv-01351-JAD-NJK |
| Petitioner | |
| v. | **Order Denying Petition for Writ of Habeas Corpus and Closing Case** |
| Jeremy Bean, *et al.*, | |
| Respondents | **[ECF No. 124]** |

Timothy Wayne Connors brings this counseled habeas corpus petition under 28 U.S.C. § 2254 to challenge his 1994 Nevada state-court murder and robbery convictions. In a joint trial with his brother Christopher, Connors was found guilty of robbery and first-degree murder—both with a deadly weapon—for the 1990 shooting death of Kelly Vandlandingham near Nevada's Nellis Air Force Base, and he was sentenced to life in prison without the possibility of parole. I dismissed the majority of Connors's claims as untimely, non-cognizable, unexhausted or procedurally defaulted.[1] The parties have now fully briefed the merits of the claims remaining in Connors's second amended habeas petition.[2] Having carefully examined the parties' briefing and the record, I deny Connors's petition and a certificate of appealability and close this case.

---

[1] ECF Nos. 97, 147.

[2] ECF Nos. 124 (second amended petition), 150 (respondents' answer), 156 (Connors's reply).

## Background

**A.     Connors was convicted in state court in 1994.**

In its order affirming Connors's conviction, the Nevada Supreme Court described the factual background of the case as follows:[3]

> On the evening of December 14, 1990, appellant Timothy Connors ("Tim") and his brother Christopher ("Chris") drove Kelly Vandlandingham to a remote location outside of Las Vegas. Tim shot Vandlandingham nine times (seven times in the head and once in each arm) and stole his gun, his money, and some of the drugs Vandlandingham carried in his pocket.  Tim and Chris were subsequently arrested and charged with one count of murder with the use of a deadly weapon and one count of robbery with the use of a deadly weapon. Following a month-long jury trial, the jury found both Chris and Tim guilty of both charges.  By special verdict the jury sentenced Tim to two consecutive life sentences without the possibility of parole for the murder conviction and two consecutive fifteen-year sentences for the robbery with the use of a deadly weapon conviction.[4]

The judgment of conviction was entered on June 2, 1994.[5]  The Nevada Supreme Court affirmed on July 28, 1998.[6]

**B.     Connors's state habeas proceedings were ultimately unsuccessful.**

Connors filed a *pro se* postconviction habeas corpus petition in the state district court in August 1999.[7]  The state court held a three-day evidentiary hearing in August and September

---

[3] For a detailed statement of the facts, *see* Exh. 217, ECF No. 72-4 at 2–9 (state district court's 2012 order denying Connors's first state post-conviction habeas petition).

[4] Exh. 160, ECF No. 61-2 at 2 (cleaned up); *see also* Exhs. 140 and 141, ECF Nos. 57-2 and 57-3 (jury verdicts at guilt phase of trial); Exh. 154, ECF No. 60-1 (jury verdict at penalty phase).

[5] Exh. 157, ECF No. 60-4.

[6] Exh. 160, ECF No. 61-2.

[7] Exh. 163, ECF No. 62.

2

2007[8] and denied the petition by written order on February 25, 2008.[9]  Connors appealed, and the Nevada Supreme Court reversed and remanded, ruling that counsel should have been appointed for Connors.[10]  On remand, counsel was appointed and filed a supplement to Connors's petition;[11] a further evidentiary hearing was held on March 12, 2011;[12] counsel filed supplemental briefing on Connors's behalf;[13] and the court filed a written order again denying Connors's petition on August 13, 2012.[14]  Connors appealed again, and on June 10, 2015, the Nevada Supreme Court affirmed the denial of the petition.[15]

**C.      Connors's federal habeas proceedings**

Connors initiated this federal habeas corpus action more than a decade ago in July 2015.[16]  The court granted Connors's motion for appointment of counsel,[17] and counsel filed an amended petition on his behalf.[18]  The parties litigated a motion to dismiss.[19]  Later, the court granted Connors's unopposed motion for stay and abeyance to allow him to return to state court to exhaust some claims.[20]

---

[8] Exhs. 185, 187 and 189; ECF Nos. 66-2, 66-4 and 67-1.

[9] Exh. 196, ECF No. 68-3.

[10] Exh. 204, ECF No. 70-1.

[11] Exh. 211, ECF No. 71-3.

[12] Exh. 210, ECF No. 71-2.

[13] Exh. 216, ECF No. 72-3.

[14] Exh. 217, ECF No. 72-4.

[15] Exh. 243, ECF No. 78.

[16] ECF No. 1.

[17] ECF Nos. 4, 7.

[18] ECF No. 80.

[19] ECF Nos. 85, 97.

[20] ECF No. 103.

Connors filed a second state post-conviction habeas petition on April 2, 2019.[21]  The state district court denied that petition as procedurally barred.[22]  Connors appealed, but the appeal was dismissed on November 15, 2019, because the notice of appeal was untimely; the Nevada Supreme Court denied rehearing.[23]

Connors filed a third state post-conviction habeas petition,[24] the state district court denied that petition as procedurally barred,[25] and the Nevada Court of Appeals affirmed on March 13, 2023.[26]  On September 11, 2023, the Nevada Supreme Court denied Connors's petition for extraordinary writ of error in which he claimed that the Nevada Court of Appeals acted in excess of its jurisdiction.[27]

Connors then returned to federal court, and the stay of this case was lifted.[28]  Connors filed a second amended petition—his operative petition—on January 8, 2024.[29]  The parties litigated another motion to dismiss, and several more claims were dismissed, leaving four to be adjudicated on their merits:[30]

> **Ground 3**: The trial court erred in allowing **the autopsy report** into evidence because the coroner who conducted the autopsy did not testify, violating Connors's rights to a fair trial, due process, confrontation, and equal protection under the Fifth, Sixth, and Fourteenth Amendments.

---

[21] Exh. 252, ECF No. 108-3.

[22] Exh. 256, ECF No. 109-2.

[23] Exh. 264, ECF No. 110-5; Exh. 269, ECF No. 134-17.

[24] Exh. 277, ECF No. 134-25; Exh. 279, ECF No. 134-27.

[25] Exh. 281, ECF No. 134-29.

[26] Exh. 291, ECF No. 127-2.

[27] Exh. 284, ECF No. 125-5.

[28] ECF No. 121.

[29] ECF No. 124.

[30] ECF Nos. 135, 147.

**Ground 11**: The prosecution engaged in misconduct by admitting **the improper report and related testimony of medical examiner Dr. Green without the proper qualification**, denying Connors the right to a fair trial, equal protection, confrontation, an impartial jury, and due process of law under the Fifth, Sixth, and Fourteenth Amendments.

**Ground 12(3): Trial counsel was ineffective for failing to investigate and obtain certain pieces of evidence** that would have assisted Connors's case, including Nellis Air Force Base security surveillance of the event, surveillance from other sources, or Connors's gun-ownership records. Trial counsel knew of and failed to call: (1) Sean Trail, (2) Professor Etheridge, (3) Adam Magari,[31] (4) Norman Rita, and (5) Christopher Connors as defense witnesses in violation of Connors's Fifth, Sixth, and Fourteenth Amendment rights.

**Ground 14**: The **cumulative error** of the trial court and trial counsel violated Connors's federal constitutional rights.[32]

The respondents filed an answer responding to those claims,[33] and Connors filed a reply.[34]

## Discussion

**A.    Legal standard**

Federal habeas relief is governed by the Antiterrorism and Effective Death Penalty Act, also known as "AEDPA." If a state court has adjudicated a habeas corpus claim on its merits, a federal district court may only grant habeas relief with respect to that claim if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of

---

[31] This potential witness's name is spelled in different ways in the record. I use the spelling that Connors uses in his second amended petition. *See* ECF No. 124 at 58.

[32] ECF No. 147 at 14–15.

[33] ECF No. 150.

[34] ECF No. 156.

the evidence presented in the State court proceeding."[35]  A state court acts contrary to clearly established federal law if it applies a rule contradicting the relevant holdings or reaches a different conclusion on materially indistinguishable facts.[36]  And a state court unreasonably applies clearly established federal law if it engages in an objectively unreasonable application of the correct governing legal rule to the facts at hand.[37]  Section 2254 does not, however, "require state courts to *extend*" Supreme Court precedent "to a new context where it should apply" or "license federal courts to treat the failure to do so as error."[38]  The "objectively unreasonable" standard is difficult to satisfy;[39] "even 'clear error' will not suffice."[40]

The AEDPA bar is high,[41] and federal habeas relief may only be granted if "there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."[42]  As "a condition for obtaining habeas relief," a petitioner must show that the state-court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."[43]  "[S]o long as 'fairminded jurists could disagree' on the correctness of the state

---

[35] 28 U.S.C. § 2254(d).

[36] *Price v. Vincent*, 538 U.S. 634, 640 (2003).

[37] *White v. Woodall*, 572 U.S. 415, 424–27 (2014).

[38] *White*, 572 U.S. at 424–27.

[39] *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

[40] *Wood v. Donald*, 575 U.S. 312, 316 (2015) (per curiam) (citation omitted); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable— a substantially higher threshold.").

[41] As the United States Supreme Court acknowledged in *Harrington v. Richter,* 562 U.S. 86, 102 (2011), "If this standard is difficult to meet, that is because it was meant to be."

[42] *Harrington*, 562 U.S. at 102.

[43] *Id.* at 103.

6

court's decision," habeas relief under Section 2254(d) is precluded.[44]  AEDPA "thus imposes a 'highly deferential standard for evaluating state-court ruling,' . . . and 'demands that state-court decisions be given the benefit of the doubt.'"[45]

If a federal district court finds that the state court committed an error under § 2254, the district court must then review the claim de novo.[46]  The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief,[47] but state-court factual findings are presumed correct unless rebutted by clear and convincing evidence.[48]

**B.      Grounds 3 and 11: the autopsy report and Dr. Green's testimony**

In the remaining parts of ground 3, Connors claims that the trial court's admission of an autopsy report violated his federal constitutional rights to a fair trial, due process, confrontation, and equal protection.[49]  And in the remaining parts of ground 11, Connors claims that his constitutional rights to a fair trial, confrontation, due process, equal protection, and an impartial jury were violated because the prosecution committed misconduct by offering into evidence the autopsy report and Dr. Giles Sheldon Green's related testimony.[50]  The crux of these claims is

---

[44] *Id.* at 101.

[45] *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted).

[46] *Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

[47] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

[48] 28 U.S.C. § 2254(e)(1).

[49] ECF No. 124 at 40–44.  I dismissed as unexhausted Connors's compulsory-process claim in ground 3.  ECF No. 147 at 10.  Connors provides no explanation or authority for the equal-protection claim in ground 3 (*see* ECF Nos. 124, 156), so I deny that claim without further discussion.

[50] ECF No. 124 at 48.  Connors provides no explanation or authority for the equal-protection or impartial-jury claims in ground 11 (*see* ECF Nos. 124, 156), so I deny those claims without further discussion.

7

that Dr. Green, the county's chief medical examiner, should not have been allowed to testify about the autopsy, and the autopsy report should not have been admitted through his testimony, because the autopsy was performed by Dr. Nina Hollander, not Dr. Green.[51]

Connors filed a pretrial petition for writ of habeas corpus in which he raised the issue of Dr. Green's testimony at the preliminary hearing regarding the autopsy, in part based on his confrontation right.[52] The court held argument on the petition and granted it.[53] The State appealed, and the Nevada Supreme Court vacated the order granting the petition and remanded, ruling:

> … [T]he report on which Green relied would have fallen under the "record of regularly conducted activity" exception to the hearsay rule. NRS 51.1351(1) states that a timely report made by a knowledgeable person in the course of a regularly conducted activity, "as shown by the testimony of the custodian or other qualified witness," is not inadmissible hearsay "unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness."
>
> Green testified that autopsy reports are regularly kept by the medical examiner's office. There is no indication that Hollander, the method used, or the circumstances under which the report was prepared lack trustworthiness. Accordingly, it appears that the report would have been admissible.
>
> Our recent decision in *Emmons v. State*, 107 Nev. 53, 807 P.2d 718 (1991), offers additional support for our conclusion. In *Emmons* we allowed testimony by a medical examiner regarding a radiologist's concurring opinion, and further allowed admission of a letter by the radiologist to support the medical examiner's opinion. We concluded that this evidence was admissible under the general exception to the hearsay rule, NRS 51.075(1), because the radiologist was a disinterested witness with no apparent motive

---

[51] *See* ECF No. 124 at 42; *see also* Exh. 100, ECF No. 53-2 at 101–65 (Dr. Green's testimony); *id.* at 131–33 (admission of the autopsy report into evidence).

[52] Exh. 14, ECF No. 30-3 at 8–9, 15–19.

[53] Exh. 17A, ECF No. 32; Exh. 20, ECF No. 32-3.

> to lie.  Similarly, in this case, the medical examiner was a disinterested witness with no apparent motive to lie.  The
>
> nature and circumstances under which the autopsy report was made offer assurances of accuracy not likely to be enhanced by calling the medical examiner as a witness.[54]

Connors reasserted his objection the autopsy report's admission at trial.[55]

On his direct appeal, Connors again raised these issues.  The Nevada Supreme Court denied relief on the claims, concluding that its previous ruling on the appeal regarding Connors's pretrial habeas petition was the law of the case:

> Tim [Connors] next argues that the district court improperly admitted an unsigned autopsy report into evidence and improperly allowed an expert to testify about the contents of that report. [Footnote omitted.]  During Tim's preliminary hearing, Dr. Giles Green, Chief Medical Examiner of the Clark County Coroner Medical Examiner's Department, testified about and drew conclusions from an autopsy report transcribed from the recorded comments of Dr. Nina Hollander, who performed the autopsy on Vandlandingham.
>
> On May 1, 1991, Tim filed a petition for writ of habeas corpus arguing, among other things, that the evidence against him was insufficient to charge him with murder, because the autopsy report and Dr. Green's corresponding testimony were impermissible hearsay.  Chris later joined in that petition.  On July 1, 1991, the district court granted their petition for writ of habeas corpus.  On January 29, 1992, this court, in an order of remand, concluded that Dr. Green's opinion was based on the type of information reasonably relied upon by experts in that field and was therefore admissible.  [Footnote: The order also concluded that the autopsy report qualified as a business record and that both the report and Dr. Green's testimony satisfied the general hearsay exception.  See NRS 51.075.]
>
> . . .

---

[54] Exh. 22, ECF No. 33-1 at 3–4.

[55] Exh. 120, ECF No. 53-2 at 56–61 (objection at trial); Exh. 4–6 (further objection at trial by Christopher Connors's counsel.

> We have reviewed the record and conclude that the relevant facts before this court at the time of the order of remand were substantially the same as the facts presented to it now. Accordingly, we conclude that the conclusions reached in the January 20, 1992, Order of Remand are the law of the case and thus this argument lacks merit.[56]

Because the remaining claims in grounds 3 and 11 were asserted before the Nevada Supreme Court and ruled upon on their merits by that court, I address these claims under the deferential AEDPA standard. The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."[57] In 1998, when the Nevada Supreme Court adjudicated these claims, the analysis of Confrontation Clause claims was governed by the "indicia of reliability" test set out in *Ohio v. Roberts*.[58] Under that test, hearsay statements could be introduced in a criminal case consistent with the Confrontation Clause if the witness was unavailable at trial and the statements had "adequate indicia of reliability," *i.e.*, the statements fell within a "firmly rooted hearsay exception" or bore "particularized guarantees of trustworthiness."[59]

---

[56] Exh. 160, ECF No. 61-2 at 3–4.

[57] U.S. Const. amend. VI. The Sixth Amendment's Confrontation Clause was applied to the states through the Fourteenth Amendment in *Pointer v. Texas*, 380 U.S. 400 (1965).

[58] *Ohio v. Roberts*, 448 U.S. 56 (1980).

[59] *Roberts*, 448 U.S. at 66. Connors's argument in support of these claims is largely based on the Supreme Court's 2004 decision in *Crawford v. Washington*, 541 U.S. 36 (2004), in which the Court prescribed a new test for confrontation-clause claims, and subsequent caselaw refining and applying *Crawford*. That reliance is misplaced. Federal habeas corpus review under the AEDPA standard looks to the law that was clearly established by United States Supreme Court precedent at the time of the state court's decision. *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405, 412–13 (2000)). The Nevada Supreme Court ruled on these claims in 1998, almost six years before *Crawford* was decided, and the U.S. Supreme Court has held that *Crawford* does not apply retroactively to cases final on direct review. *Whorton v. Bockting*, 549 U.S. 406, 409 (2007).

Connors does not make any argument to the effect that Nevada's statutory exception to the hearsay rule for records of regularly conducted activities was not a firmly rooted hearsay exception within the meaning of *Roberts*. Nor does he make any argument that Nevada's general hearsay exception under NRS 51.075—for statements made under circumstances offering "assurances of accuracy not likely to be enhanced by calling the declarant as a witness"—should not have applied, or that it did not comport with *Roberts*.

Dr. Green testified that Dr. Hollander was unavailable to testify at trial because she suffered from ulcerative colitis and osteoporosis.[60] Connors argues that ulcerative colitis was not such a severe condition as to make Dr. Hollander unavailable,[61] but he does not point to any evidence at trial supporting that argument. Nor does Connors cite any legal authority undermining the Nevada Supreme Court's reliance on Dr. Green's testimony, particularly his conclusion that Dr. Hollander was unavailable.

Regarding Connors's claims of fair-trial and due-process violations resulting from the admission of the autopsy report and Dr. Green's testimony, the question is whether the evidence "rendered the trial fundamentally unfair in violation of due process."[62] The question is the same with respect to Connors's fair-trial and due-process claims alleging prosecutorial misconduct for seeking admission of the autopsy report and Dr. Green's testimony.[63] The question is whether

---

[60] Exh. 100, ECF No. 53-2 at 105–06, 159–61.

[61] ECF No. 156 at 30–31.

[62] *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (citing *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)); *see also Andrew v. White*, 604 U.S. 86, 88 (2005) (describing the Court's 1991 decision in *Payne v. Tennessee*, 501 U.S. 808, 825 (1991), as having "made clear that when 'evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief.'").

[63] *See Smith v. Phillips*, 455 U.S. 209, 219–21 (1982).

the alleged prosecutorial misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."[64]  A fair trial is one "resulting in a verdict worthy of confidence."[65]

Connors has not described with any specificity the prosecutorial misconduct he alleges, and his argument that the admission of the autopsy and Dr. Green's testimony rendered his trial fundamentally unfair is wholly conclusory.[66]  Connors also does not explain how he was unfairly prejudiced by the admission of this evidence.  In short, Connors does not make a showing that the Nevada Supreme Court's rulings on the remaining claims in grounds 3 and 11 were an objectively unreasonable application of *Roberts* or any other then-applicable United States Supreme Court precedent, or that those rulings were based on any unreasonable determination of the facts in light of the evidence presented.  So I deny Connors habeas corpus relief on the remining parts of grounds 3 and 11.

**C.     Ground 12(3): trial counsel's investigation**

In the remaining part of ground 12(3), Connors contends that his trial attorneys, William Terry and Mace Yampolsky, were constitutionally ineffective by failing to investigate and obtain certain evidence that would have helped his case, including Nellis Air Force Base security surveillance, surveillance from other sources,[67] and Connors's gun-ownership records.  He also alleges that his trial counsel knew of but failed to call as defense witnesses: (1) Sean Trail,

---

[64] *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

[65] *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

[66] *See* ECF No. 156 at 29.

[67] Connors does not identify what "surveillance from other sources" he claims his trial counsel should have investigated and obtained.  *See* ECF No. 124 at 55–58; ECF No. 156 at 36–40.

(2) Professor Etheridge, (3) Adam Magari, (4) Norman Rita, and (5) Christopher Connors.[68]

The right to counsel embodied in the Sixth Amendment guarantees "the right to the effective assistance of counsel."[69]  In the hallmark case of *Strickland v. Washington*, the United States Supreme Court held that an ineffective-assistance-of-counsel (IAC) claim requires a petitioner to show that (1) his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all of the circumstances of the particular case[70] and (2) it is reasonably probable that, but for counsel's errors, the result of the proceedings would have been different.[71]  A reasonable probability is a "probability sufficient to undermine confidence in the outcome."[72]  The likelihood of a different result must be substantial, not just conceivable.[73]

Any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct so as to avoid the distorting effects of hindsight.[74]  A petitioner making an IAC claim "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."[75]  The test is whether an attorney's representation amounted to incompetence under prevailing professional

---

[68] *See* ECF No. 147 at 14–15.

[69] *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

[70] *Id*. at 690.

[71] *Id*. at 694.

[72] *Williams*, 529 U.S. at 390–91 (quoting *Strickland*, 466 U.S. at 694).

[73] *Pinholster*, 563 U.S. at 189 (citing *Richter*, 562 U.S. at 112).

[74] *Strickland*, 466 U.S. at 689.

[75] *Id*. at 690.

norms, not whether it deviated from best practice or most common custom.[76]  A petitioner must overcome the presumption that counsel made sound trial-strategy decisions.[77]  It is inappropriate to focus on what could have been done rather than focusing on the reasonableness of counsel's performance.[78]  The United States Supreme Court describes federal review of a state supreme court's decision on an IAC claim as "doubly deferential."[79]  So federal district courts "take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d)'"[80] and consider only the record that was before the state court that adjudicated the claim on its merits.[81]

The state district court held four days of evidentiary hearings—three with Connors representing himself and one after counsel was appointed for him—on these IAC claims, among other claims.[82]  Most importantly here, Connors's trial lawyers testified about their investigation.[83]  After the evidentiary hearings were completed, and after the parties filed further

[76] *Richter*, 562 U.S. at 105.

[77] *Id*. at 104–05.

[78] *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Strickland*, 466 U.S. at 687–94).

[79] *Pinholster*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

[80] *Id*. (quoting *Strickland*, 406 U.S. at 689, and *Mirzayance*, 556 U.S. at 121 n.2).

[81] *Id*. at 181–85.

[82] Exhs. 185, 187, 189 and 210; ECF Nos. 66-2, 66-4, 67-1 and 71-2.

[83] *See* Exh. 185, ECF No. 66-2 at 11–13, 17–18 (testimony of William Terry regarding Shawn Trail); *id*. at 13–14 (testimony of Terry regarding Professor Etheridge); *id*. at 14–15 (testimony of Terry regarding Adam Magari); ECF No. 66-2 at 15–17 (testimony of Terry regarding Christopher Connors); *id*. at 18–19, 25–26 (testimony of Terry regarding gun-ownership records); *id*. at 20–21 (testimony of Terry regarding Norman Rita); Exh. 187, ECF No. 66-4 at 24–26 (testimony of Mace Yampolsky regarding Christopher Connors); Exh. 210, ECF No. 71-2 at 42–44, 55, 58–60 (testimony of Terry regarding Christopher Connors); *id*. at 47–48 (testimony of Terry regarding Trail); *id*. at 48–49 (testimony of Terry regarding Professor Etheridge); *id*. at 49 (testimony of Terry regarding Nellis Air Force Base security surveillance); *id*. at 50–51 (testimony of Terry regarding Magari).

14

briefing, the court denied Connors's petition.  The court found that trial counsel had strategic reasons for not calling Trail, Etheridge, Magari, and Chris.[84]  It held that counsel's decision not to call Trail was a reasonable strategic decision made after Chris's counsel interviewed him and determined that he would not be helpful.[85]  Counsel chose not to call Professor Etheridge, an astronomer who could testify that "ambient light at the scene permitted [Connors] to see the victim and that the victim was still shooting at him" because that theory contradicted evidence that Connors reloaded his gun and continued to shoot after the victim stopped shooting.[86]  The court ruled that counsel "concluded [that] it was better to indicate it was pitch black and [Connors] kept shooting because he couldn't see [that] the victim was disarmed."[87]  So the court concluded that not calling Professor Etheridge was a strategic decision to avoid contradicting the theory of the defense.[88]

The court also held that not calling Magari, who Connors believed could give "negative character evidence" against another witness, was a tactical decision because counsel believed that the "evidence was too stale to be helpful and it might open the door to admission of unfavorable aspects of [Connors's] military activities."[89]  As for Rita, counsel looked for him, learned that he had been deported for drug smuggling, and could not locate him.  The court

---

[84] Exh. 217, ECF No. 72-4 at 18.

[85] *Id.* at 18, 20, 34.

[86] *Id*. at 18–19.

[87] *Id; see also id*. at 20 ("[C]ounsel believed it was best to illustrate that the scene of the murder was pitch black, therefore, as the State's witnesses testified it was pitch black, there was no need to challenge them.") and 34–35 ("Trial counsel, upon a review of the evidence, made a strategic decision to pursue the theory that there was no visibility at the scene of the killing.").

[88] *Id.* at 19.

[89] *Id.*

15

concluded that "whether [Rita's] testimony would be favorable to the defense was unknown, but even if he could be located out of the country, there was no method [counsel] could use to acquire his testimony."[90]  And with respect to the decision not to call Chris, counsel testified that he made that call "to avoid admission of [Chris's] second statement to the police," which contained "very damaging information."[91]  Counsel had succeeded in preventing the statement's admission unless Chris testified.  The court also found that the record indicated that "Chris did not take the stand in order to avoid harming his brother's case," and acknowledged that Connors's counsel "could not compel a co-defendant to testify."[92]

The state court also rejected Connors's contentions that his trial counsel should have sought out records regarding Connors's gun ownership.  During his cross-examination, Connors stated that the guns he owned were registered, prompting the state to introduce registration records from the Las Vegas Metropolitan Police Department indicating that no guns were registered to him.  Connors asserted that his counsel should have found that he had one gun registered with the North Las Vegas Police Department.  Counsel testified that, "in his recollection, he had no gun records in his possession at the time trial took place."[93]  Counsel also concluded that this was a "minor issue" that wouldn't have made a difference to the verdict.  The state court concluded that counsel was not ineffective because, even if those records had been provided, it wouldn't have made a difference to the verdict or the jury's consideration of

---

[90] *Id.*

[91] *Id.*

[92] *Id.*

[93] *Id.* at 20.

16

Connors's credibility because evidence had already shown that Connors made numerous false statements to the police in order to protect himself.[94]

The trial court also rejected Connors's assertion that counsel should have sought video surveillance from Nellis Air Force Base. Connors alleged that "motion sensors on the fencing to the Nellis runways activate video cameras if there is motion close to the fences" and that counsel should have obtained it. But the court acknowledged that "the crime scene was over a mile from the runways and there is no evidence [suggesting that] the sensors or cameras were activated and took recordings."[95] There was also no evidence to suggest that Connors's trial or appellate counsel would be able to obtain access to this security footage.[96]

The Nevada Supreme Court affirmed the denial of Connors's claim, ruling that counsel's tactical decision not to call Trail, Etheridge, or Magari because "their testimony would have been more harmful than helpful" was not ineffective.[97] It also concluded that counsel was not ineffective for failing to call Chris because counsel could not compel Chris to testify, and that not calling Rita was also not ineffective because it would have been futile to do so.[98] The Supreme Court also found that Connors failed "to explain how counsel was deficient or how he was prejudiced" for failing to challenge "the visibility of the crime scene" and "gun records."[99]

---

[94] *Id.*

[95] *Id.* at 27.

[96] *Id.*

[97] Exh. 243, ECF No. 78 at 3 (citing *Doleman v. State*, 921 P.2d 278, 280–81 (Nev. 1996) (explaining that tactical decisions are virtually unchallengeable)).

[98] *Id.* (citing *Donovan v. State*, 584 P.2d 708, 711 (Nev. 1978) (explaining that counsel cannot be deemed ineffective for failing to attempt futile actions)).

[99] *Id.* at 5.

The state-court rulings were plainly reasonable in view of the evidence presented at the evidentiary hearings. Counsel articulated reasonable strategic decisions behind their decision not to call the witnesses Connors mentions and not to further inquire about Connors's gun ownership. Counsel also explained why calling other witnesses would have been futile and why they did not seek out video surveillance footage that wouldn't have been likely to contain any useful evidence. The state-court findings to that effect were not an unreasonable application of *Strickland* or any other Supreme Court precedent and were not based on an unreasonable determination of the facts in light of the evidence presented.[100] I thus deny Connors relief on the remaining claims in ground 12(3).

## D.      Ground 14: cumulative error

Connors contends in ground 14 that the cumulative effect of the errors he alleges violated his federal constitutional rights. Cumulative error may supply a basis for habeas relief if, "although no single trial error examined in insolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a defendant."[101] Having found no errors, there is nothing for me to cumulate. I therefore deny Connors relief on ground 14.

---

[100] Connors does not argue with any specificity that he can meet the standard for federal habeas corpus relief prescribed by 28 U.S.C. § 2254(d). *See* ECF No. 124 at 55–58; ECF No. 156 at 36–40. Connors's only mention of § 2254(d) in either his second amended petition or his reply to the answer is in the reply, and it is nothing more than a conclusory statement that he meets the standard. ECF No. 156 at 40 ("There is a reasonable probability that the jury would have decided the case differently, and resulted in decisions that were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).").

[101] *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996).

**E.      Certificate of appealability**

The right to appeal from the district court's denial of a federal habeas petition requires a certificate of appealability. To obtain that certificate, the petitioner must make a "substantial showing of the denial of a constitutional right."[102] If the "district court has rejected the constitutional claims on the merits," that showing "is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[103] I decline to issue a certificate of appealability because this standard is not met.

**Conclusion**

IT IS THEREFORE ORDERED that Connors's second amended petition for writ of habeas corpus **[ECF No. 124] is DENIED**. A certificate of appealability is **DENIED**.

**The Clerk of Court is directed to:**

> • **SUBSTITUTE** Jeremy Bean for respondent Brian E. Williams, Sr., and

> • **ENTER JUDGMENT** for the respondents and **CLOSE THIS CASE**.

_____
U.S. District Judge Jennifer A. Dorsey
January 28, 2026

---

[102] 28 U.S.C. § 2253(c).

[103] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077–79 (9th Cir. 2000).